# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

3M COMPANY, a Delaware
corporation, and 3M INNOVATIVE
PROPERTIES COMPANY, a Delaware
corporation,

                Plaintiffs,

   v.

Pradeep Mohan,

                Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 09-1413 ADM/FLN

_____

Allen W. Hinderaker, Esq., and William Schultz, Esq., Merchant & Gould P.C., Minneapolis, MN; Hildy Bowbeer, Esq., 3M Innovative Properties Company, St. Paul, MN, on behalf of Plaintiffs.

Pradeep Mohan, pro se.

_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Plaintiffs 3M Company and 3M Innovative Properties Company's (collectively "3M") Motion for Partial Summary Judgment [Docket No. 122].[1]  For the reasons stated below, 3M's partial summary judgment motion is granted.

## II. BACKGROUND

3M manufacturers and sells stethoscopes under the LITTMANN brand.  Am. Compl. [Docket No. 69] ¶¶ 7-8.  3M obtained federal trademark registration for various marks used and associated with the LITTMANN brand including (1) MASTER CARDIOLOGY, United States

---

[1] Defendant Pradeep Mohan filed a partial summary judgment motion which the Court orally denied at the July 14, 2010 hearing.

Registration Number 3,253,234 registered on June 19, 2007, for use on stethoscopes; and (2) CARDIOLOGY III, United States Registration Number 3,619,324, registered on May 12, 2009, also for use on stethoscopes. In addition, 3M owns U.S. Patent No. 5,449,865 ("the '865 patent") entitled "Ear Tips Having Molded-In Recesses for Attachment to A Stethoscope," which covers a special configuration of an ear tip that is designed to engage with the eartubes of stethoscopes. Id. ¶ 19. Defendant Pradeep Mohan ("Mohan") sells stethoscopes over the internet at his company website, kila.com, and on national third-party websites such as Amazon.com and ebay.com. Id. ¶ 21.

On June 16, 2009, 3M filed this action asserting that Mohan's sales and advertising activities constitute trademark and patent infringement. See id. ¶¶ 43-49, 72-77. Mohan answered and filed counterclaims for antitrust, unfair competition, tortious interference with a contractual relationship, and deceptive trade practices. Def.'s Resp. [Docket No. 68]. Mohan has withdrawn his antitrust and unfair competition counterclaims [Docket No. 92]. The parties have completed discovery, and 3M moves for summary judgment that (1) the '865 patent is valid; and (2) Mohan infringed claims 8, 9, and 12 of the '865 patent. 3M also seeks dismissal of Mohan's remaining counterclaims and a ruling on the validity of the trademarks at issue.

### III. DISCUSSION

**A. Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## B. Plaintiffs' Motion for Partial Summary Judgment

### 1. Patent Infringement

#### a. Invalidity

An issued patent is presumed valid. 35 U.S.C. § 282. An accused infringer must establish its claims of invalidity by clear and convincing evidence. Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 962 (Fed. Cir. 2001). Because patent invalidity is an affirmative defense that Mohan failed to plead, 3M argues that Mohan is precluded from raising it now as a defense. However, in his response, Mohan requests a "[d]eclaration of the Court that any patent rights to the stethoscope ear piece owned by the Plaintiffs are invalid, void and/or otherwise enforceable." Am. Response [Docket No. 72] p. 30.

Title 35 of the United States Code sets forth the grounds for finding a patent invalid. See, e.g., §§ 101, 102, and 103. When probed in an interrogatory regarding the basis for Mohan's contention that the '865 patent is "invalid, void and/or otherwise enforceable," Mohan responded by stating "Mohan has no additional documentation. All information has already been provided to 3M in the package of documents sent to 3M in December 2009. Additional

3

information has been provided in Mohan's Response to the Complaint." Schultz Decl. [Docket No. 125] Ex. 6 at 12. 3M moved to compel a substantive response to this interrogatory which Magistrate Judge Franklin L. Noel granted. Mohan then responded by stating "The answers are incorporated in the response in G (above)." Schultz Decl. Ex. 7 at 25. The response to G relates to Mohan's allegations regarding his claims for tortious interference with a contractual relationship and deceptive trade practices and does not provide 3M with a substantive basis for the assertions of patent invalidity.

At his deposition, Mohan was asked to explain why he believed the '865 patent was improvidently issued, and he responded, "It's a simple mechanism of a groove in a – flange and grooves . . ." In his report titled "Expert Rebuttal Report of Pradeep Mohan to Report of Mary Jo Johnson" he writes "The same mechanism is found on a turkey baster. A common turkey baster shows the same recess and flange mechanism." Schultz Decl. Ex. 8, ¶ 19. He further states: "[3M's expert's] results reinforce the position that this patent should be declared invalid since the concept and applications are intuitive and common place." Id. ¶ 23. Mohan has adequately raised the defenses of anticipation and obviousness, 3M has fully briefed these defenses, and, therefore, the Court will address the merits of the arguments.

### i. Anticipation

For a prior art reference to anticipate a claim under § 102, "the reference must disclose each and every element of the claim with sufficient clarity to prove its existence in the prior art." Motorola, Inc. v. Interdigital Technology Corp., 121 F.3d 1461, 1473 (Fed. Cir. 2007). "An expert's conclusory testimony, unsupported by the documentary evidence, cannot supplant the requirement of anticipatory disclosure in the prior art reference itself." Id.

Mohan has provided only his own unsupported assertion that a turkey baster anticipates the claimed invention.[2] Mohan has not identified what prior art anticipates the '865 patent, much less shown that each claim of the '865 patent is contained in the prior art. "A passing reference to patents that might anticipate patents in suit is not enough to create a triable issue of fact regarding the invalidity of the patents in suit." Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc., No. CV 98-5691 ER, 1999 WL 35014902, at *2 (C.D. Cal. July 23, 1999). There is no record that Mohan has conducted any tests. He has not placed any drawings or descriptions of a turkey baster in evidence, and he has not performed any analysis of the products. In fact, Mohan concedes that he did not "exert[] undue effort in proving the patent invalid" and that the issue of patent validity "did not merit an elaborate defense from Mohan." Defs'. Resp. to Pls'. Mot. for Partial Summ. J. at 8.

Mohan asserts that "[h]is preparation is ongoing and limited by his status as a pro-se defendant and a sole proprietor with no employees." Id. at 7. He further states that "[s]ummary judgment is not appropriate because [he] has not had an opportunity to present his case. It is not reasonable for him to make a comprehensive and elaborate Response within twenty one days of the Complaint. His initial Response is just that and not a final defense." Id. Defendant's pro se status does not excuse him from complying with the Federal Rules of Civil Procedure. See Ackra Direct Mktg. Corp. v. Fingerhut Corp., 86 F.3d 852, 856-57 (8th Cir. 1996). Rule 56 requires the nonmovant to come forward with evidence sufficient to create a genuine issue of material fact. See also Celotex, 477 U.S. at 322 (the party opposing the motion for summary

---

[2] Mohan argues for the first time in his opposition brief that a "door hinge, eye dropper, medical syringe, gears, toilet plunger, [and] toothbrush" render the invention invalid due to obviousness. Defs'. Resp. to Pls'. Mot. for Partial Summ. J. [Docket No. 141] at 4.

5

judgment bears the burden of responding after the moving party has met its burden). Because Mohan has not presented evidence sufficient to create a genuine issue of material fact, the Court grants 3M's motion for summary judgment that the '865 patent is not invalid due to anticipation.

### ii. Obviousness

3M also moves for summary judgment on the issue of invalidity due to obviousness. A patent is invalid when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art . . ." 35 U.S.C. § 103(a). Obviousness is a question of law based on underlying factual findings. Honeywell Int'l, Inc. v. United States, 596 F.3d 800, 806 (Fed. Cir. 2010).

Mohan argues that a person of ordinary skill in the art would have combined the disparate pieces of prior art references making the invention obvious. See Def.'s Resp. to Pls.' Mot. for Partial Summ. J. at 4. 3M responds that Mohan's arguments fail because he has submitted no evidence to support his assertions, specifically no evidence that at the time of the invention there was any reason to combine the references. Pls.' Mot. for Partial Summ. J. at 11-12.

Again, the statements made by Mohan are merely conclusory statements without a factual basis that the patent is invalid due to obviousness. The record contains no specific factual findings on the scope and content of the prior art. The statements in Mohan's Response are broad-brush statements of what Mohan believes should be obvious to the Court and will be obvious to a jury. "It is not the trial judge's burden to search through lengthy technologic documents for possible evidence. The public interest in invalidating invalid patents does not

override the well established procedure requiring the nonmovant to come forward with evidence sufficient to negate the movant's position." Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc., 249 F.3d 1341, 1353 (Fed. Cir. 2001). Mohan fails to come forward, as is required, with *evidence* that the patents are invalid due to obviousness. Thus, the Court grants 3M's summary judgment motion on this defense.

### b. Infringement

3M argues that there are no genuine issues that Mohan's products infringe claims 8, 9, and 12 of the '865 patent. An infringement analysis requires two steps: (1) claim construction to determine the scope and meaning of the asserted claims, and (2) a comparison of the properly construed claims with the allegedly infringing device to determine whether the device embodies every limitation of the claims. See Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc). Claim construction is a matter of law for the court. Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996). Whether the accused device infringes a claim, either literally or under the doctrine of equivalents, is a question of fact. See Insituform Techs., Inc. v. Cat Contracting, Inc., 161 F.3d 688, 692, (Fed. Cir. 1998). But the Court may decide this issue at summary judgment if it concludes that no genuine issue of fact exists. See, e.g., TechSearch, L.L.C. v. Intel Corp., 286 F.3d 1360, 1369 (Fed. Cir. 2002); Amhil Enters. Ltd. v. Wawa, Inc., 81 F.3d 1554, 1557-58 (Fed. Cir. 1996). Courts routinely grant summary judgment and find infringement as a matter of law where there is no factual dispute on the infringement question. See, e.g., Elantech Devices Corp. v. Synaptics, Inc., No. C 06-1839, 2008 WL (N.D. Cal. Apr. 12, 2008); BASF Agrochemical Prods. v. Unkel, No. 05-CV 1478, 2006 WL 3533133 (W.D. La. Dec. 7, 2006). The parties' dispute focuses on independent Claim 8 and dependent

7

Claims 9 and 12 of the '865 patent.

### i. Claim 8:

The language of this claim recites:

> 8. An ear tip adapted for use on a stethoscope having a binaural having dual sound-transmitting eartubes adapted to deliver sound to a human ear, each eartube having an ear tip connection end having a plurality of flanges theron, each ear tip connection end defining a longitudinal axis, said ear tip comprising:
>
> a body formed of a non-porous elastomeric material having a channel therein having a plurality of separate, individual and distinct recesses within said non-porous elastomeric material for cooperably engaging the flanges in complementary fashion such that the plurality of flanges resist longitudinal removal of the ear tip from the stethoscope.

3M asserts that the accused device: (1) is adapted for use on a stethoscope with ear tubes "having an ear tip connection end having a plurality of flanges thereon"; (2) is "formed of a non-porous elastomeric material"; (3) has "a channel therein having a plurality of separate, individual and distinct recesses"; and (4) coopearably engages the flanges of a stethoscope ear tube "in complementary fashion such that the plurality of flanges resist longitudinal removal of the ear tip from the stethoscope." Pls.' Mot. for Partial Summ. J. at 18-19.

**(1) "Adapted For Use On A Stethoscope With Ear Tubes Having An Ear Tip Connection End Having A Plurality Of Flanges Thereon"**

Mohan asserts that the "patent defines two interlocking pieces," Def.'s Resp. in Opp. to Summ. J. at 13, that is, "ear tips mating with mating flanges" of a stethoscope's ear tube. Schultz Decl., Ex. 8 at 2. Since the accused device "mate[s] with screw threads (and not flanges)," of an ear tube, Mohan contends that his ear tip does not infringe. Id. 3M responds

8

that claims 8, 9, and 12 relate to the ear tip alone, and that the ear tube is not a required element of those claims. Pls.' Mot. for Partial Summ. J. at 16. According to 3M, the phrase "adapted for use on a stethoscope" is a mere recitation of purpose and as such only claims the ability of the ear tip to adapt with the ear tube of a stethoscope in a specific manner. Id. at 16-17.

3M's argument is supported by the case law. "[P]reambles describing the use of an invention generally do not limit the claims because the patentability of apparatus or composition claims depends on the claimed structure, not on the use or purpose of that structure." Catalina Mktg. Int'l v. Coolsavings.com, Inc., 289 F.3d 801, 809 (Fed. Cir. 2002). The claim language specifically recites "an ear tip adapted for use on a stethoscope . . ." While the language does claim a stethoscope, the asserted claim does not require a stethoscope and 3M did not rely on this phrase to define its invention. The phrase "adapted for use" means only that the ear tip must be adapted in a particular way, specifically that the ear tip must be capable of engaging with the ear tube of a stethoscope that has a plurality of flanges. 3M's expert opines that the accused structure is an ear tip capable of engaging with the ear tube of an stethoscope that has a plurality of flanges. Schultz Decl., Ex. 4, Part 1 at 10. Mohan does not appear to dispute this assertion and presents no evidence to the contrary. Schultz Decl., Ex. 1 (Mohan's Dep.) at 316 (conceding that 3M's expert report includes "no factual errors"). Thus, the accused device infringes this claim.

**(2) "A body formed of a non-porous elastomeric material"**

3M's expert opines that the accused device is formed of a non-porous elastomeric material, specifically that it is manufactured from silicone rubber. Ex. 4, Part 1 at 12. Mohan does not appear to dispute this assertion. Ex. 1 at 316. Therefore, the accused device infringes

9

this element of claim 8.

**(3) "Having a channel therein having a plurality of separate, individual and distinct recesses within said non-porous elastomeric material"**

3M's expert explained that the accused device was "cut open and [she] observed at least two distinct recesses formed into the inner channel of each ear tip." Ex. 4, Part 1 at 11. Mohan does not appear to dispute this assertion. Ex. 1 at 316. This element of claim 8 is infringed.

**(4) "For cooperably engaging the flanges in complementary fashion such that the plurality of flanges resist longitudinal removal of the ear tip from the stethoscope"**

3M's expert stated that she attached the accused device to a stethoscope that had a binaural with two sound-transmitting ear tubes, the connection end of each having a plurality of flanges. Ex. 4, Part 1 at 12. As she performed her testing, she felt each of the at least two recesses of the accused device cooperably engage in complementary fashion with the flanges of the stethoscope ear tubes. Id. Again, Mohan does not appear to dispute this assertion. Ex. 1 at 316. Thus, the accused device meets this element of claim 8.

### ii. Dependent Claims 9 and 12

Claim 9 recites:

> An ear tip according to claim 8 wherein each of the recesses have a diameter, and one of said recesses has a diameter that is larger than the diameter of the other recesses.

Claim 12 recites:

> An ear tip according to claim 8 wherein said ear tip is fabricated from a material selected from the group consisting of vulcanized natural rubber, vinyl elastomers, elastomeric polyurethanes, silicone rubbers, nitrile rubbers, and thermoplastic rubbers.

In her report, 3M's expert concludes "to a reasonable degree of professional certainty that" the accused device meets the limitations of claims 9 and 12. Ex. 4, Part 1 at 13-14. Mohan does not appear to dispute this conclusion. Ex. 1 at 316. Thus, the accused device also infringes these claims.

### 2. Tortious Interference With Contract

3M seeks summary judgment on Mohan's counterclaim for tortious interference with contract. To state a claim for tortious interference with contractual relations, Mohan must show that "(1) a contract existed; (2) the alleged wrongdoer had knowledge of the contract; (3) the alleged wrongdoer intentionally interfered with the contract; (4) the alleged wrongdoer's actions were not justified; and (5) damages were sustained as a result." Guiness Import Co. v. Mark VII Distrib., Inc., 153 F.3d 607, 613 (8th Cir. 1998) (citing Sip-Top, Inc. v. Ekco Group, Inc., 86 F.3d 827, 832 (8th Cir. 1996) (applying Minnesota law)); see also Kjesbo v. Ricks, 517 N.W.2d 585, 588 (Minn. 1994).

Mohan asserts that 3M caused eBay to suspend Mohan's eBay account, which amounts to tortious interference with contract because there were willing buyers for his product. Mohan appears to argue that 3M's primary motive was improper because it was not protecting its legitimate trademark interests but rather attempting to "caus[e] hardship and unfair hurdles to a small company" and "suppress competition." Def's. Am. Resp. at 25-26. Mohan further contends that 3M "intended to suppress, harass, intimidate" him by "threatening costly litigation." Id. at 25. 3M responds that it invoked eBay's Verified Rights Owner ("VeRO") program when it learned that Mohan was using 3M's trademarks to sell his products.

Enforcing a trademark may sometimes appear to involve coercion or monopolization.

11

James Burrough Ltd. v. Lesher, 309 F.Supp. 1154, 1161-62 (S.D. Ind. 1969). The very requirement of registration, however, results in such monopolies. La Maur, Inc., v. Alberto-Culver Co., 179 U.S.P.Q. 607, 615 (D. Minn. 1973). Thus, "[a] trademark owner is entitled to advise others of his trademark rights, to warn others that they or others are or may be infringing his rights, to inform others that he is seeking to enforce his rights through legal proceedings, and to threaten accused infringers and their customers with suit." Leopold v. Henry I. Siegel Co., 1987 WL 5373 (S.D.N.Y. 1987); see also La Maur, 179 U.S.P.Q. at 615 (trademark owner can use negotiation and litigation to enforce its registered rights). A trademark holder may legally take action if it believes that its trademarks are being infringed. Mohan has not shown that 3M did anything more than protect its legitimate trademarks interests, thus this claim is rejected. See Dudnikov v. MGA Entn't, Inc., 410 F.Supp.2d 1010, 1019 (D. Colo. 2005) (affirming grant of summary judgment against eBay seller on tortious interference claim where rights holder acted within its rights by utilizing the VeRO program stating that this "could not, as a matter of law, be improper interference."); see also Eastern R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 140 (U.S. 1961) (concluding that the act of filing a lawsuit is immune from antitrust or tort liability unless it is found to be a mere sham intended to disguise tortious or anti-competitive liability).

### 3. Deceptive Trade Practices

3M next seeks summary judgment on Mohan's counterclaim for deceptive trade practices. Minn. Stat. § 325D.44, subd. 1, states in relevant part:

> A person engages in a deceptive trade practice when, in the course of business, vocation or, or occupation, the person: (8) disparages the goods, services, or business of another by false or misleading representation of fact; . . . or (13) engages in any other conduct

>which similarly creates a likelihood of confusion or of
>misunderstanding.

Mohan alleges that "[3M]'s actions are deceptive trade practices," Def's. Am. Resp. at 27, but he fails to identify the specific conduct that constitutes the basis of his claim. There is no evidence that 3M engaged in any deception or made any false or misleading representation of fact that would disparage the goods, services, or business of Mohan. Further, there is no evidence that 3M created any confusion or misunderstanding regarding Mohan's goods or services. Accordingly, summary judgment is granted on this claim.

**C. Mohan's Motion for Partial Summary Judgment**

3M asserts that it is entitled to summary judgment on the validity of its trademarks. A district court "has the power to 'enter summary judgments sua sponte, so long as the losing party was on notice that [he] had to come forward with all of [his] evidence.'" Lerohl v. Friends of Minn. Sinfonia, 322 F.3d 486, 492 (8th Cir. 2003) (quoting Celotex, 477 U.S. at 326).

**1. Ownership of a Valid and Distinctive Trademark**

Registration of a trademark is prima facie evidence of the validity of the mark. See 15 U.S.C. § 1057. In addition, registered trademarks "are presumed to be distinctive." Aromatique, Inc. v. Golden Seal, Inc., 28 F.3d 863, 869 (8th 1994).

**2. Whether the Marks are Generic, Merely Descriptive, or Suggestive**

In order for 3M to possess valid trademarks, it must prove that it used the marks in actual commerce to identify goods, was the first to do so, and the marks were valid. Frosty Treats Inc. v. Sony Computer Entm't Am. Inc., 426 F.3d 1001, 1003 (8th Cir. 2005); Aveda Corp. v. Evita Mktg., Inc., 706 F.Supp. 1419, 1427 (D. Minn. 1989). The parties do not dispute that 3M used

13

the MASTER CARDIOLOGY and CARDIOLOGY III marks first and in actual commerce to identify goods. They disagree regarding whether the mark is valid.

> A term for which trademark protection is claimed will fall in one of four categories: (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful. A generic mark refers to the common name or nature of an article, and is therefore not entitled to trademark protection. A term is descriptive if it conveys an immediate idea of the ingredients, qualities or characteristics of the goods, and is protectible only if shown to have acquired a secondary meaning. Suggestive marks, which require imagination, thought, and perception to reach a conclusion as to the nature of the goods, and arbitrary or fanciful marks, are entitled to protection regardless of whether they have acquired secondary meaning.

Frosty Treats Inc., 426 F.3d at 1004-05 (citations omitted).

Mohan argues that the marks are generic because "doctors have come to refer to all Cardiology quality single head stethoscopes as master cardiology" and "all Cardiology quality dual head stethoscopes as cardiology iii." Def.'s Mot. for Partial Summ. J. at 9. However, he provides no survey evidence of consumer understanding, or letters, testimony or affidavits from consumers showing generic use or understanding of the terms. See Magic Wand, Inc. v. RDB, Inc., 940 F.2d 638, 641 (Fed. Cir. 1991). Mohan further contends that the marks have a common meaning that simply describes the products.

3M responds that the terms are suggestive and entitled to broad protection. 3M contends that, although the term "'cardiology' signifies a relation to the science of the heart, neither trademark gives a direct reference to a stethoscope product[,]" both marks subtly indicate something about the products, but require a mental leap to draw any conclusions about the nature of the product. Pls.' Mem. in Opposition to Def.'s Mot. for Partial Summ. J. at 13. 3M has also presented survey evidence of consumer confusion and intentional copying to show that its marks

14

are distinctive and recognized in the relevant consuming market.

Mohan has produced precious scant evidence that the terms are generic or merely descriptive. The marks do not describe a stethoscope, nor does it convey any information about the stethoscope's characteristics, design, or qualities, other than, possibly, that MASTER CARDIOLOGY, is a top-of-the-line product. The marks bear some relationship to the product in the sense that the device relates to the heart but no evidence has been adduced that would support a finding that an ordinary consumer would immediately associate the marks with a stethoscope. See Lemme v. Nat'l Broad. Co., Inc., 472 F.Supp. 2d 433, 444 (E.D.N.Y. 2007) (citing McCarthy on Trademarks § 11.67 at 11-129-11-130 ("If the mental leap between the word and the products's attributes is not almost instantaneous, this strongly indicates suggestiveness, not direct descriptiveness.")). 3M has presented evidence that the terms do not literally describe the device, but instead require some imagination to connect them to the stethoscope. Under these circumstances and because Mohan has presented virtually no evidence to the contrary, the Court concludes that the terms are suggestive.

### 3. Abandonment

Mohan claims 3M's rights to the marks-in-suit should be canceled because 3M has abandoned their use. A mark is abandoned "[w]hen its use has been discontinued with intent not to resume such use" or "[w]hen any course of conduct of the owner, including acts of omission as well as commission, causes the mark to lose its significance as a mark." 15 U.S.C. § 1127. Mohan has the burden of proving abandonment by clear and convincing evidence. See 3 J. McCarthy, Trademarks and Unfair Competition § 17:12 (4th ed. 2008).

Mohan argues that 3M's inconsistent notice of registration is evidence of abandonment.

However, 15 U.S.C. § 1111 provides: "[A] registrant of a mark registered in the Patent and Trademark Office, **may** give notice that his mark is registered by displaying with the mark the words 'Registered in U.S. Patent and Trademark Office' or 'Reg. U.S. Pat. & Tm. Off.' or the letter R enclosed within a circle, thus ® . . ." (Emphasis added). Indeed, courts have expressly stated "[t]he failure to give notice that a mark has been registered by the United States Patent Office is not an act of omission which can cause a mark to lose its significance as an indication of origin." Luvera v. Pepperidge Farm Inc., 186 U.S.P.Q. 302, 304 (T.T.A.B. 1975); Bambu Sales, Inc. v. Sultana Crackers, Inc., 683 F.Supp. 899, 911 (E.D.N.Y. 1988). Mohan presents no genuine issue of abandonment and, therefore, fails to meet his burden to demonstrate that 3M has abandoned the marks.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Partial Summary Judgment [Docket No. 122] is **GRANTED**;

2. Plaintiffs' request for a ruling that the trademarks are valid is **GRANTED**.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: August 9, 2010.