IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M COMPANY, a Delaware corporation, and 3M INNOVATIVE PROPERTIES COMPANY, a Delaware corporation,<br><br>        Plaintiffs,<br>v.<br><br>PRADEEP MOHAN<br><br>        Defendant. | Court File No. 09-CV-01413 ADM-FLN |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' AWARD OF FEES AND COSTS**

Plaintiffs 3M Company and 3M Innovative Properties Company (collectively "3M") respectfully submit this Memorandum in Support of Plaintiffs' Award of Fees and Costs pursuant to paragraph 2 of the Judgment (Dkt. No. 210) and Fed. R. Civ. P. 54(d) and Local Rule 54.3(c).  3M respectfully requests the award of its attorneys' fees of $ 942,063.78 and the award of its costs of $ 151,522.05.

**I.      3M's REQUESTED ATTORNEYS' FEES ARE REASONABLE**

When awarding attorneys' fees, the Court should consider that

> …The award of attorneys' fees may be substantial; the cost to the losing party of paying the attorneys' fees can be greater than the cost of paying the judgment awarded on the merits. The factual resolution of attorneys' fees cases, however, is "peculiarly within the competence of the district courts, which are intimately familiar with their respective bars." [citation omitted] The trial judge has a special understanding of the degree of complexity of the issues, and a unique ability to evaluate first hand the competence of the attorneys.  Because of its singular viewpoint, the district court is best equipped to determine whether hours were reasonably expended, whether the attorneys' hourly rates are within the general rates charged for a particular service in the relevant community, whether the

prevailing party achieved a level of success justifying the hours spent, and whether the risk of the case not prevailing calls for an enhancement of the lodestar fee.

*Moore v. City of Des Moines, Iowa*, 766 F.2d 343, 345-346 (8th Cir. 1985) (affirming award of attorneys fees and interest by district court in Section 1983 action).

The legal representation of 3M was a joint effort of the outside lawyers and paraprofessionals of Merchant & Gould, led by Allen Hinderaker, and the in-house lawyers, contract attorneys, and paraprofessionals of 3M, led by Hildy Bowbeer. (Decl. of Allen Hinderaker at ¶ 2.). Additionally, the Faegre & Benson law firm was engaged to address Defendant's antitrust counterclaims. (Decl. of Hildy Bowbeer at ¶ 6.) The Court may properly award 3M the attorneys' fees incurred through its outside counsel as well as its in-house counsel and legal staff. *See e.g. Textor v. Bd. Of Regents of N. Ill. Univ.*, 711 F.2d 1387 (7th Cir. 1983) (affirming award of attorneys' fees for in-house counsel); *Pittsburg Plate Glass Co v. Fidelity & Cas. Co. of N.Y.*, 281 F.2d 538, 542(3d Cir. 1960) (affirming award of attorneys' fees associated with in-house counsel and basing the award on the amount of salary attributable to the litigation); *Travelers Indemnity Co. of Ill. V. Millard Refrigerated Svs.*, No. 8:00cv91, 2002 U.S. Dist. LEXIS 16459, at *3-4 (D. Neb. Aug. 30, 2002) (awarding attorneys' fees associated with the work of in-house counsel and basing the award on an hourly rate); *Zacharias v. Shell Oil Co.*, 627 F. Supp. 31, 35-36 (E.D.N.Y. 1984)

(awarding attorneys' fees associated with the work of in-house counsel and basing the award on an hourly rate).

### A. The Lodestar Provides The Appropriate Measure Of 3M's Attorneys' Fees

The Court should apply the "lodestar" approach to determine the appropriate attorneys' fee award. *See e.g. Doctor's Assocs. v. Subway.SY LLC*, No. 09-CV-31482010, 2010 WL 3187899, at *4 (D. Minn. July 30, 2010); *Fair Isaac Corp. v Experian Info. Solutions, Inc.*, 711 F. Supp. 2d 991, 1008 (D. Minn. 2010); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). The lodestar is determined by multiplying the number of hours reasonably expended by the reasonable hourly rate for each person providing the legal services. *Fair Isaac Corp.*, 711 F. Supp. 2d at 1008. In determining the lodestar, various facts are considered, including hourly time records, billing rates, the attorneys' skill and experience, and detailed billing records showing tasks performed in the litigation. *See e.g. Junker v. Eddings*, 396 F.3d 1359, 1366 (Fed. Cir. 2005)[1] The lodestar is then assessed for reasonableness and the amount of the fee award may be increased or decreased based on a variety of other factors, such as the skill and time required, the novelty of the questions involved, the fixed or contingent fee basis of the representation, the results obtained, and the relationship between attorney and client. *Id.*; *see State v. Paulson*, 188 N.W.2d 424, 426 (Minn. 1971).

---

[1] The Merchant & Gould invoices for legal services and the corresponding 3M record of its review of each invoice are attached to the Hinderaker Declaration for *in camera* review. The Faegre & Benson invoices for legal services are attached to the Bowbeer Declaration for *in camera* review. Defendant is provided with redacted copies of these documents to preserve all applicable privileges.

1.     *The Time and Labor Involved*

There is a strong presumption that the lodestar amount represents the reasonable fee to be awarded. *Hixon v. City of Golden Valley*, No. 06-cv-1548, 2007 WL 437311, at *2 (D. Minn. Dec. 13, 2007) (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)). The lodestar amount for the legal services of Merchant & Gould, Faegre & Benson, and 3M's in-house legal staff is $ 942,063.78. (Hinderaker Decl. at ¶ 13; Bowbeer Decl. at ¶¶ 6, 10, 16.)

Merchant & Gould attorneys spent approximately 2,079.7 hours in the prosecution of 3M's claims and the defense of Defendant's counterclaims over seventeen (17) months. (*See* Hinderaker Decl. at ¶ 9.).[2] Faegre & Benson successfully defeated all of Defendant's antitrust counterclaims for the fixed fee of $20,000. (Bowbeer Decl. at ¶ 6.). And, 3M's in-house lawyers, contract attorneys, and paralegals provided substantial and substantive legal services throughout the case, including as co-counsel at trial. (Bowbeer Decl., *in passim*.)

2.     *The Amount Involved and the Results Obtained*

The court must consider "the relationship between the amount of the fee awarded and the results obtained." *Hensely*, 461 U.S. at 437; *First State Bank of Floodwood v. Jubie*, 86 F.3d 755, 761 (8th Cir. 1996) ("Minnesota courts consider the results obtained critical to the award . . ."). Here, 3M obtained the full scope of the injunctive relief it sought, and the Court found Defendant's infringing conduct to be deliberate and willful.

---

[2] Individual task and billing summary descriptions are attached to the Hinderaker Declaration.

The Court further held that had Defendant waived his right to jury trial, significant statutory damages would have been awarded for each mark. (Dkt. No. 209, at 60, n. 8.) 3M was completely successful in the proof of its claims.

### 3. *The Fees Customarily Charged*

All of the attorneys and legal staff of Merchant & Gould, Faegre & Benson, and 3M are deeply qualified, given their respective years of experience, and the lead lawyers and paralegals representing 3M are each very experienced and competent. (Hinderaker Decl. at ¶¶ 4-8; Exs. 1-3; Bowbeer Decl. at ¶¶ 2-4; 11-12.)

In determining a reasonable hourly rate, "[t]he district court may consider the attorney's regular hourly rates as well as the prevailing community rate for similar work," the "skill of representation, difficulty of work performed, counsel's experience, [and] counsel's reputation." *H.J. Inc. v Flygt Corp.*, 925 F.2d at 260 (citing *Blum v. Stenson*, 465 U.S. 886, 895 and n.11 (1984)). In intellectual property cases, the American Intellectual Property Law Association (AIPLA) survey of the fees and costs charged for intellectual property matters is helpful evidence. *See B-K Lighting, Inc. v. Vision3 Lighting,* No. 06-02825, 2009 WL 3838264, at *5 (C.D. Cal. 2009) ("Courts also frequently use survey data in evaluating the reasonableness of attorneys' fees;" referencing AIPLA survey in awarding attorneys' fees in a patent case). The Court may also apply its own experience and knowledge in assessing reasonable rates and the amount of time billed for particular tasks. *See Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2005).

Here, Merchant & Gould charged 3M at discounted rates from those normally charged other clients. (Hinderaker Decl. at ¶ 12.) Those discounted rates ranged from $495 to $70 per hour. Rates in those ranges have been found to be reasonable in this Judicial District for non-intellectual property matters on numerous occasions; they are clearly reasonable in this trademark case. *See e.g. In re UnitedHealth Group, Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1106 (D. Minn. 2009) (setting rates of $500 for partners, $200 for associates and $100 for paralegals); *U.S. v. Walgreen Co.*, 621 F. Supp. 2d 710, 714 (D. Minn. 2009) (approving rates of $500 per hour); *Turner v. Mukasey*, No. 01-cv-1407, 2008 WL 62261, at *1 (D. Minn. Jan. 3, 2008) (finding that $500 per hour was a reasonable rate for a partner in January 2008).

The fixed fee charged by Faegre & Benson was also a favorably negotiated rate for this matter. (Bowbeer Decl. at ¶ 6.). And, every hour 3M's in-house lawyers, contract attorneys, and legal assistants devoted to the important substantive work of this case was an hour not spent by outside counsel. The substantial substantive work of 3M's in-house counsel, contract attorney staff, and paralegals is detailed in the Bowbeer Declaration at paragraphs 10 and 12 through 16. Outside and in-house counsel worked closely in a coordinated way to provide 3M efficient, cost-effective, high value legal services.

One measure of this high value and the reasonableness of the fees incurred by 3M are the fees incurred in other cases. 3M's fee request is reasonable in light of the attorneys' fees awards in other trademark cases that have proceeded through trial. *See e.g. Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166 (11th Cir. 1994) (affirming

6

award of approximately $925,000 in fees); *Cent. Benefits Mut. Ins. Co. v. Blue Cross & Blue Shield Ass'n*, No. 91-459, 1992 U.S. App. LEXIS 34838 (6th Cir. Dec. 29, 1992) (affirming award of approximately $2.5 million in attorneys' fees); *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1128 n.2 (5th Cir. 1991) (affirming award of $937,000 in attorneys' fees); *Irwin Indus. Tool Co. v. Worthington Cylinders Wis., LLC*, No. 3:08cv291, 2010 U.S. Dist. LEXIS 104771, at *73 (W.D.N.C. Oct. 1, 2010) (awarding $904,620.00 in attorneys' fees); *Sears Roebuck & Co v. Menard*, No. 01C9843, 2004 U.S. Dist. LEXIS 21168 (N.D. Ill. Sept. 28, 2004) (awarding approximately $2.5 million in attorneys' fees).[3]

The fee request is also reasonable when judged against the 2009 Economic Survey of the AIPLA. As reported by the AIPLA, the fees and costs through trial for trademark cases where the rights at stake are between $1 million and $25 million range from $1,075,000 to $1,225,000 in the Minneapolis – St. Paul area. When the rights at stake have a value above $25 million, as here, the range is from $1,500,000 to $1,933,000 in the Minneapolis – St. Paul area. (Hinderaker Decl. at ¶¶ 15-16.). By all measures, 3M requests the award of a reasonable amount in attorneys' fees.[4]

---

[3] Mr. Mohan's *pro se* status added to the complexity of the case, increasing the amount of fees incurred to prosecute 3M's claims and defend against his counterclaims. (Hinderaker Decl. at ¶¶ 18 – 20.).

[4] 3M's fee request is properly limited to the prosecution of this lawsuit and the defense of Defendant's counterclaims. 3M's pre-litigation policing of its trademarks against the actions of Defendant are not claimed. (Hinderaker Decl. at ¶ 3.). Also, none of the time of 3M in-house counsel James Voegeli, regarding trademark issues, or Nancy Lambert, regarding patent issue, is claimed. (Bowbeer Decl. at ¶ 3.). And, none of the time of 3M's internal Litigation Technology Services group, although directly related to the litigation, is included in the request for fees or expenses. (Bowbeer Decl. at ¶ 13.).

## II.   3M SHOULD BE AWARDED ALL OF ITS COSTS

28 U.S.C. § 1920 governs the taxation of costs.  Under that statute, the following costs may be taxed:

(1)   Fees of the clerk and marshal;
(2)   Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3)   Fees and disbursements for printing and witnesses;
(4)   Fees for exemplification and copies of papers necessarily obtained for use in the case;
(5)   Docket fees under section 1923 of this title;
(6)   Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920 (2006).

3M is entitled to recover all of its other costs pursuant to 15 U.S.C. § 1117(a)[5]. The relevant portion of 15 U.S.C. § 1117(a) reads as follows,

> When…a violation under section 1125 (a) or (d) of this title, or a willful violation under section 1125 (c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover…the costs of the action…."

Here, the Court found "in favor of Plaintiffs on their claims for trademark

---

[5] The expenses law firms typically charge clients are also recoverable as a component of the award of attorneys' fees, in cases where 15 U.S.C. § 1117(a) is not applicable. *Neufeld v. Searle Labs.,* 884 F.2d 335, 342 (8th Cir. 1989) (out-of-pocket expenses "are recoverable as part of the reasonable attorneys' fee ordinarily awarded to prevailing plaintiffs[.]"). *See also Jones v. Nat'l Am. Univ.,* No.  06-5075, 2009 U.S. Dist. LEXIS, at *13-14 (D.S.D. July 8, 2009) (awarding cost of postage, long-distance telephone charges, and fax charges for successful ADEA claim); *Invessys, Inc. v. McGraw-Hill Cos.,* 369 F.3d 16, 22-23 (1st Cir. 2004) (interpreting the federal Copyright Act, 17 U.S.C. § 505 to allow for computer research expenses).

infringement, permanent injunctive relief, and attorneys' fees and costs." (Dkt. No. 209 at 2.)

Under 15 U.S.C. § 1117 the "costs of the action" include all reasonable out of-pocket expenses incurred in the matter. *See, e.g., World Triathalon Corp. v. Dunbar*, 539 F.Supp.2d 1270, 1290 (D. Haw. 2008) (authorizing all costs allowed under 28 U.S.C. § 1920 and other reasonable expenses under 15 U.S.C. § 1117(a)); *SNA, Inc. v. Array*, 173 F. Supp. 2d 347, 353 (E.D. Pa. 2001) (costs awardable under 15 U.S.C. §1117 include travel costs); *JTH Tax, Inc. v. H&R Block E. Tax Svs., Inc.*, 128 F.Supp.2d 926, 947 (E.D. Va. 2001), *aff'd in part, vacated in part on other grounds*, 28 Fed. Appx. 207 (4th Cir. 2002)(costs awardable under 15 U.S.C. § 1117 include expert witness fees, travel expenses, and long distance telephone calls); *Tri-Star Pictures, Inc. v. Unger*, 42 F.Supp.2d 296, 306 (S.D.N.Y. 1999) (authorizing adequately itemized out-of-pocket expenses as well as survey expense pursuant to 15 U.S.C. § 1117).

3M should be awarded $151,522.05 in costs pursuant to 28 U.S.C. § 1920 and 15 U.S.C. § 1117. Each category of costs is discussed below. Invoices supporting 3M's requests for costs are attached to the Declarations of Janene Andersen and Hildy Bowbeer.

### A.      Filing Fees

3M incurred $350.00 in the original filing of this matter. The filing fee is recoverable under 28 U.S.C. § 1920(1). *See Uni-Systems, Inc. v. Delta Air Lines, Inc.*, No. 4-96-973, 2002 U.S. Dist. LEXIS 5618, at *4 (D. Minn. Mar. 28, 2002); United

States District Court for the District of Minnesota, Bill of Costs Guide 4 (Dec. 2009) (hereinafter "Bill of Costs Guide").[6]

### B. Transcript Fees

#### 1. *Deposition Costs, Including Video Deposition, Are Recoverable*

Deposition transcript costs are taxable under 28 U.S.C. § 1920(2) where the deponent testified at trial, where the deposition was admitted into evidence, or where the transcript was reasonably necessary to the party's case. *Uni-Systems*, 2002 U.S. Dist. LEXIS 5618 at *6; Bill of Costs Guide at 4 (deposition transcripts may be taxed when the deponent testified at trial or when the deposition was admitted into evidence). The attendant court reporter fees associated with the deposition are also taxable. Bill of Costs Guide at 5. Deposition costs are also taxable where the deposition was "necessarily obtained for use in the case." *Shimek v. Weinig AG*, No. 99-2014, 2003 U.S. Dist. LEXIS 2160, at *9 (D. Minn. Feb. 10, 2003); *EEOC v. The Johnson Co.*, No. 1-75-Civ.317, 1978 U.S. Dist. LEXIS 15794, at *11 (D. Minn. Aug. 30, 1978) ("It is not necessarily fatal to taxation that [deposition transcripts] were not introduced or otherwise used at the trial."); Bill of Costs Guide at 5 ("[i]f the deposition does not meet one of the categories above, provide an explanation as to why the transcript was reasonably necessary at the time of its taking").

---

[6] This fee may be awarded even absent documentation. Bill of Costs Guide at 4. A copy of a check request showing payment of the filing fee is attached as Ex. 1 to the Andersen Declaration.

3M incurred $5,825.23 to take Defendant's deposition.[7] While Defendant did not testify at trial, his deposition testimony was introduced into evidence through a bench memo received by the Court on October 7, 2010. The admissions made by Defendant during his deposition were important to 3M in proving several aspects of its infringement case, including bad faith, actual confusion, and the poor quality of the infringing goods. The Court relied upon the evidence received through Defendant's deposition in its Findings of Fact and Conclusions of Law. (*See e.g.* Dkt. No. 209 at 2, 16, 22, 39.)

2.   *Trial Transcripts*

3M incurred $34.00 to procure a trial transcript. Although not recited in the Bill of Costs Guide, the cost of a trial transcript is recoverable where it is "necessarily obtained for use in the case." *Mercon Corp. v. Goodyear Tire & Rubber Co.*, 57 F.R.D. 506, 507 (D. Minn. 1972). Transcripts used for motion practice or for post-trial briefing are recoverable. *Id.*; *see also Flint Hills Res. LP v. Lovegreen Turbine Servs.*, No., 2008 U.S. Dist. LEXIS 75861, at *37-38 (D. Minn. Sept. 29, 2008); *Wade v. Miss. Coop. Extension Serv.*, 65 F.R.D. 102 (N.D. Miss. 1974) (costs awarded for trial transcripts where they were necessary for post-trial briefing). Here, 3M necessarily obtained the trial transcript in order to complete its post-trial briefing. The cost of the trial transcript is recoverable.[8]

---

[7] The invoice associated with this expense is attached as Exhibit 2 to the Andersen Declaration.

[8] The check request for the fees associated with the trial transcript is attached to the Andersen Declaration as Ex. 3.

### C.   Witness Fees

3M incurred $93,638.39 in witness fees and expenses related to the trial testimony of Hal Poret, John Grudnowski, Shad Christensen, Jim Voegeli, Robert (Skip) Regan, Ingrid Blair, Dawn McGinley, Kim Gibson, Ned Hancock, Mary Jo Johnson, and Jon Trembath.  These costs should be awarded pursuant to 28 U.S.C. § 1920(3).

Defendant may argue that 3M is not entitled to witness expenses for Jim Voegeli, Robert (Skip) Regan, Ingrid Blair, Dawn McGinley, Kim Gibson, Ned Hancock, and Mary Jo Johnson, contending they should be treated as if they were the party.  But, witness expenses for employee witnesses are taxable when the employee witness attends trial solely for the purpose of appearing as a witness and not to assist with the management of the case.  *See e.g. U.S. Fid. & Guar. Co. v. Lee Invs. LLC*, No. CV-F-99-5583, 2010 U.S. Dist. LEXIS 77575, at *25 (E.D. Cal. Aug. 2, 2010); *Hartford Fin. Servs. Grp., Inc. v. Cleveland Pub. Library*, No. 1:99CV1701, 2007 U.S. Dist. LEXIS 22528, at *31 (N.D. Ohio Mar. 28, 2007); *Marcoin, Inc. v. Edwin K. Williams & Co.*, 88 F.R.D. 588, 591 (E.D. Va. 1980) (the suggestion that officers of the defendant corporation are parties to the proceeding "is not exactly correct" . . . the weight of authority holds that officers and directors of a corporation are in a different class" so that witness fees are allowable); *Garcia v. Halliburton Servs.*, No. H-78-1950, 1980 U.S. Dist. LEXIS 13459, at *9 (S.D. Tex. July 29, 1980) ("[t]he expense of directors and officers of the corporation may be allowed as costs even though they are testifying on behalf of their corporation, so long as their interest in the litigation is no more than a natural concern for the welfare of the corporation"); *Kemart Corp. v. Printing Arts*

*Research Labs., Inc.*, 232 F.2d 897, 901 (9th Cir. 1956). The expenses claimed for each of these persons are those incurred solely as a witness.[9] The witness expenses are properly taxed.

     3M further requests that the actual expenses incurred by Mr. Poret for air travel to the trial be awarded. *See* Bill of Costs Guide at 6 (allowing costs of the actual expenses of travel by common carrier). 3M's request includes taxation of a subsistence allowance for each individual for each of the days the witness testified as well as for each of the days the individual traveled to or from the trial.[10] *Id.*; *see also Am. Steel Works v. Hurley Const. Co.*, 46 F.R.D. 465, 468 (D. Minn. 1969) ("witness fees are not limited to days of actual testimony. Fees may be taxed for days that the witness is reasonably and necessarily present at trial. This includes in appropriate cases also time spent in travel to and from the place of trial, delays and temporary adjournments.").

     3M further requests statutory attendance fees for several of its witnesses: Mssrs. Poret, Grudnowski, and Christensen. The requested fees include a fee for each day the witness testified as well as a fee for each day of travel to and from the trial. *Id.*; Bill of Costs Guide at 6. Additionally, the other fees and expenses of 3M's experts, Mr. Poret and Mr. Grudnowski, as well as the fees of Mr. Christensen[11] should be awarded. While recoverable witness fees may be limited to subpoena costs, the Court may award

---

[9] 3M only claims witness expenses for Ingrid Blair for the day she testified.
[10] See Ex. 4 to the Andersen Declaration for a chart detailing 3M's requests related to witness fees, airfare, and subsistence allowance for each witness. The invoices supporting 3M's requests with respect to each witness are attached as Exs. 4-A through 4-D.
[11] If the Court refuses to award the additional fees and expenses under 28 USC § 1920, these fees should then be awarded pursuant to 15 USC § 1117.

testimonial costs under 28 U.S.C. §1920 which were "crucial to the issues decided."  *See Crues v. KFC Corp.,* 768 F.2d 230, 234 (8th Cir. 1985) ("Expenses for expert witnesses not appointed by the court ordinarily are limited by 28 U.S.C. § 1821(a)(1), (b) (1982). On remand, however, the district court should consider this expense in light of *Nemmers v. City of Dubuque,* 764 F.2d 502, 506 (8th Cir.1985), in which the court allowed additional expenses because the expert's testimony was 'crucial to the issues decided.'").

The fee charged by Mr. Poret for conducting the consumer survey is also properly awarded.  *See, e.g., Tri-Star Pictures,* 42 F. Supp. 2d at 307 (awarding the cost of a consumer survey where the court relied on it in finding actual confusion).  The Court's Findings of Fact and Conclusions of Law show that the testimony of these witnesses and the consumer survey was important to the Court's decision.  (*See* Dkt. No. 209 at 19-21; 25-32; 44-45.)  All of the costs incurred for their testimony should be awarded pursuant to 28 U.S.C. § 1920 or 15 U.S.C. § 1117.

### D.   Fees For Exemplification & Copy Costs

Fees for exemplification and copy costs are taxed where the materials and copies "are necessarily obtained for use in the case."  Bill of Costs Guide at 7.  "[T]he phrase 'necessarily obtained for use in the case' covers the costs of actually trying a case in the courtroom, and includes documents and exhibits used at trial.  *Jones v. Nat'l Am. Univ.*, No. 06-575-KES, 2009 U.S. Dist. LEXIS 60854, at *19-20 (D.S.D. July 9, 2009) (citing *Sphere Drake Ins. PLC v. Trisko*, 66 F. Supp. 2d 1008, 1093 (D. Minn. 1999), *aff'd*, 226 F.3d 951 (8th Cir. 2000)).

Here, 3M incurred $14,204.73 in copying costs[12] and $102.96 in purchasing physical exhibits.[13] The physical evidence submitted by 3M was necessary for use at trial. The stethoscope was received as a trial exhibit, and the Court referenced both the stethoscope and magazines in its Findings of Fact and Conclusions of law. (*See e.g.* Dkt No. 209 at 4-5; 9-10; 35.) The Court's reference to this evidence demonstrates they were "necessary" for trial, and their costs should be taxed. *See Kaiser Indus. Corp. v. McLouth Steel Corp.*, 50 F.R.D. 5 (E.D. Mich. 1970) (in view of the complexity of a patent case, the costs of reproducing reports, letters, movies, and photographs was properly allowed).

Also, 3M created several large boards to display technical evidence to the Court.[14] The cost of $3,161.08 is properly taxed. *See Deaton v. Dreis & Krump Mfg. Co.*, 134 F.R.D. 219 (N.D. Ohio 1991) (the expense of preparing a large diagram was allowed as taxable costs where it was used by both plaintiff and defendant as demonstrative evidence and where it was critical to the court's understanding of the case).

### E.  Expenses Associated With Bringing the Case to Trial

Finally, 3M should be awarded various other expenses incurred in litigating this case. 3M incurred the cost of electronic legal research, per diem and hotel expenses for

---

[12] *See* Ex. 5 to the Andersen Declaration and Ex. D to the Bowbeer Declaration for invoices related to preparation of copies of trial exhibits. All of the K&B Document Technologies invoices in Ex. D to the Bowbeer Declaration represent copying costs. 3M requests that copy sets for Defendant and the judge's two copy sets be taxed as costs. *See* Bill of Costs Guide at 7. 3M requests that the costs associated with the remaining copy sets be awarded under 15 U.S.C. § 1117(a).

[13] *See* Ex. 6 to the Andersen Declaration for invoices related to the purchase of physical trial exhibits.

[14] *See* Ex. 7 to the Andersen Declaration and the Litigation Insights invoice attached in Ex. E to the Bowbeer Declaration for invoices related to the cost of the boards.

attorneys and paraprofessionals during trial, attorney per diem and hotel expenses incurred to take Defendant's deposition, parking for attorneys and paraprofessionals during trial, process server costs for subpoenas served during discovery in this case, and costs incurred to convert Defendant's document production into a readable and usable format. These expenses should be awarded to "cover the costs of actually trying a case in the courtroom[.]".[15] *Jones*, 2009 U.S. Dist. LEXIS 60854 at *20; *see also Crues v. KFC Corp.*, 768 F.2d 230, 234 (8th Cir. 1985).

## III.   CONCLUSION

For all of the reasons stated, 3M respectfully request the award of fees in the amount of $942,063.78 and costs in the amount of $151,522.05 pursuant to 28 U.S.C. § 1920, 15 U.S.C. § 1117(a), and Fed. R. Civ. P. 54(d).

---

[15] Plaintiff recognizes that the Eighth Circuit Court of Appeals still follows the antiquated rule that computer-aided research expenses are not awardable. Plaintiff seeks reimbursement for these expenses because as Chief Judge Robert Pratt said in 2008, such expenses should be allowed. *See Sun Media Systems, Inc. v. KDSM, LLC*, 587 F.Supp.2d 1059, 1064-65, fn. 4 (S.D. Iowa 2008). Here, the computer-aided research expenses were incurred in relation to the preparation of pleadings, including but not limited to, responses to the Defendant's various motions, motions in limine, and post-trial briefs requested by the Court. The expense associated with the computer-aided research does reduce the time counsel needs to spend conducting the research, thereby reducing attorneys' fees. Further, the expenses were charged to and paid by the client.

    Respectfully submitted,

                                          3M Company and
                                          3M Innovative Properties Company,

                                          through its attorneys,

Dated: December 21, 2010           **MERCHANT & GOULD**

                                          By: <u>s/ Allen Hinderaker</u>
Of counsel:                                 Allen Hinderaker
                                            William Schultz
Hildy Bowbeer                        Heather Kliebenstein
Assistant Chief Intellectual Property    3200 IDS Center
Counsel                                     80 South Eighth Street
3M Innovative Properties Company      Minneapolis, MN  55402-2215
3M Center, 220-9E-01                Telephone:  (612) 332-5300
St. Paul, MN  55144                 Facsimile:  (612) 332-9081
Telephone: (651) 737-3194

                                          *Attorneys for Plaintiffs 3M Company and 3M Innovative Properties Company*