IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M COMPANY, a Delaware corporation, and 3M INNOVATIVE PROPERTIES COMPANY, a Delaware corporation,<br><br>           Plaintiffs,<br>v.<br><br>PRADEEP MOHAN<br><br>           Defendant. | Court File No. 09-CV-01413 ADM/FLN |

**<u>DECLARATION OF ALLEN HINDERAKER IN SUPPORT OF
PLAINTIFFS' AWARD OF FEES AND BILL OF COSTS</u>**

I, Allen Hinderaker, declare as follows:

1. I am an attorney at Merchant & Gould, P.C., and I was lead outside counsel on behalf of 3M Company and 3M Innovative Properties Company ("3M"), the plaintiffs in the above-captioned matter. I have first hand knowledge regarding this litigation against Pradeep Mohan. This Declaration is in support of the award of attorneys' fees and costs to 3M in accordance with paragraph 2 of the Judgment.

2. The legal representation of 3M was a joint effort of the outside lawyers and paraprofessionals of Merchant & Gould, led by myself, and the inside lawyers and paraprofessionals of 3M, led by Hildy Bowbeer. The 3M fees and costs (not those of Merchant & Gould) are the subject of Ms. Bowbeer's Declaration.

3. The fees and costs that 3M claims are only inclusive of the time and expenses incurred in the prosecution of 3M's claims against Mr. Mohan and the defense of the counterclaims he asserted. Before work began to prepare the Complaint and this case, 3M, with the assistance of outside counsel, investigated the actions of Mr. Mohan,

marshaled the facts of his infringement and counterfeiting of 3M trademarks, demanded that he cease and desist from that improper conduct, and policed his improper selling through the VERO program of eBay.com. None of 3M's pre-Complaint enforcement of its trademark rights, whether the work of in-house or outside counsel, is the subject of this application for fees and costs.

4. From the date the case was commenced to the pre-trial phase, the Merchant & Gould lawyers with the principal responsibility for the case were William Schultz and me. My professional experience and background is summarized in Exhibit 1. The professional experience and background of Mr. Schultz is summarized in Exhibit 2. We were supported by Kristin Driemen, who is a paralegal with considerable experience.

5. The Merchant & Gould team worked in close conjunction with the 3M team from the outset of the case. The 3M team was led by Hildy Bowbeer, Assistant Chief Intellectual Property Counsel for 3M. She was supported by Brenda Swearingen, also an experienced paralegal. One measure of this close working team of Merchant & Gould and 3M is the fact the total hours for Kristin Driemen, the paralegal from Merchant & Gould, are 44.8 hours. From the beginning of the case to the pre-trial phase, most of the paralegal support to the case was provided by 3M.

6. At the pre-trial and trial phases of the case the work allocation was modified. The Merchant & Gould lawyers with principal responsibility were Heather Kliebenstein and me. The professional experience and background of Heather Kliebenstein is summarized in Exhibit 3. In an earlier trademark case tried before The Honorable Joan N. Ericksen (*Champagne Louis Roederer v. J. Garcia Carrion, S.A. and CIV USA*, Civil No. 06-213), Ms. Kliebenstein was substantially responsible for the pre-

trial and post-trial briefing. That recent earlier experience was leveraged to the benefit of 3M in this case by having Ms. Kliebenstein similarly responsible for the pre-trial and post-trial briefing here. Also, Ms. Swearingen became unavailable for medical reasons and the pre-trial and trial legal assistant support was provided by Janene Andersen of Merchant & Gould. Ms. Andersen was part of the paraprofessional teams that had supported me in other trials, and her experience was called upon for this case.

7. The trial of the case was by Ms. Bowbeer, Ms. Andersen, and me.

8. Other Merchant & Gould lawyers also incurred time in support of this case on behalf of 3M. Mr. Rob Kalinsky, whose practice is patent prosecution and counseling, assisted with the patent claims asserted against Mr. Mohan. Mr. Jon Trembath was involved in the preparation of the Complaint, given his earlier investigative work, and otherwise supported the fact investigation of the case. Mr. Eric Chad and Mr. Ryan Fletcher, Merchant & Gould associates, provided legal research and analysis and assisted in the motion practice phases of the case. The professional background and experience of each is summarized in Exhibits 4 through 7.

9. The Merchant & Gould lawyers and paralegals spent 2,079.7 hours on this case (after review and adjustment by 3M) detailed as follows:

| | |
|---|---|
| Allen Hinderaker: | 858.3 hours |
| William Schultz: | 550.9 hours |
| Heather Kliebenstein: | 211.6 hours |
| Rob Kalinsky: | 3.9 hours |
| Jon Trembath: | 63.3 hours |
| Eric Chad: | 96.4 hours |

3

   Ryan Fletcher:    38.8 hours

   Kristin Drieman:   44.8 hours

   Janene Andersen:   211.7 hours

   10. Merchant & Gould sets its hourly rates for lawyers and paraprofessionals at levels that are reasonable and fair in light of the experience and qualifications of the applicable time keeper as measured by the market. In this regard, the firm has available to it data regarding the rates charged by other lawyers and law firms that come from various sources.

   11. One source of data is The Hoffman Alvary Survey of Law Firm Economics, which M&G purchases subject to restrictions on the disclosure of the data itself. This is a national report that aggregates billing rate data as against two groups of law firms. The survey aggregates and reports on (1) the rates charged by intellectual property law firms as well as (2) the rates charged by intellectual property law firms and general practice firms with more than 50 intellectual property lawyers. While restrictions on use foreclose disclosure of the reported rates from these surveys, Merchant & Gould's rates fall within the lower twenty percent (20%) of the reported rates for both the years 2009 and 2010.

   12. 3M is a sophisticated purchaser of legal services. It retains a number of law firms in the Minneapolis-St. Paul metropolitan area and nationally, giving it access to the hourly rates of many different law firms. Additionally, as one of Minnesota's most significant companies, it has considerable market power in the purchase of legal services. 3M engaged Merchant & Gould's services for this case at significant discounts from

standard hourly rates.  A comparison of each person's standard hourly rate to the rate charged 3M is as follows:

|  | 2009 Standard Rate | 2010 Standard Rate | 3M Rate |
| --- | --- | --- | --- |
| Allen Hinderaker | $555 | $555 | $495 |
| William Schultz | $390 | $410 | $310 |
| Heather Kliebenstein | $320 | $320 | $320 |
| Rob Kalinsky | $400 | $400 | $315 |
| Jon Trembath | $425 | $425 | $385 |
| Eric Chad | $230 | $240 | $230 |
| Ryan Fletcher | $230 | $240 | $230 |
| Kristen Drieman | $165 | $170 | $165 |
| Janene Andersen | $80 | $85 | $70 |

13.     The total legal fees incurred by 3M from the Merchant & Gould services in this case are $726,130.25.  The total expenses charged with the Merchant & Gould invoices, which includes the fees of expert witnesses, are $133,635.94.

14.     Merchant & Gould submitted its invoices for legal services on a monthly basis.  The invoices were carefully reviewed, and downward adjustments were made as I deemed appropriate.  Those invoices were again carefully reviewed by 3M, and over the life of the case some entries were further adjusted as 3M deemed appropriate.  Merchant & Gould and 3M were both careful that the legal fees and expenses were necessary and reasonable in amount.  A copy of each Merchant & Gould invoice for legal services and the corresponding 3M record of its review of each invoice are provided to the Court for *in camera* review and they are attached as Exhibits 8 through 23.  The last two Merchant & Gould invoices are attached as Exhibits 24 and 25.  (A redacted version of these invoices is provided to Mr. Mohan to preserve all applicable privileges.)  Additionally, attached as Exhibit 26 is the 3M Phase and Task Codes that explains those designations as they appear on each invoice.

5

15. The following table re-states the total attorneys' fees incurred by 3M in this case from Merchant & Gould, Faegre & Benson, and the 3M in-house attorneys, contract attorneys, and paralegals:

| Category of Fees | Source | Total Amount |
|---|---|---|
| Merchant & Gould | Hinderaker Declaration at ¶ 13 | $726,130.25 |
| Bowbeer Fees | Bowbeer Declaration at ¶ 11 | $101,650.00 |
| Swearingen Fees | Bowbeer Declaration at ¶ 17 | $33,240.50 |
| Contract Attorneys' Fees | Bowbeer Declaration at ¶ 14, 15; Exs. D; E | $62,043.07 |
| Faegre & Benson | Bowbeer Declaration at ¶ 6; Exs. D; E | $18,999.96 |
| **TOTAL** | | **$942,063.78** |

16. The AIPLA Economic Survey, which is the work of the Law Practice Management Committee of the American Intellectual Property Law Association, is conducted every other year. All AIPLA members are invited to participate. The most recent AIPLA Economic Survey is dated 2009.

17. As reported by the AIPLA, the total fees and costs through trial for trademark litigation (where the rights at stake are valued between $1 million and $25 million) ranges from $1,075,000 to $1,225,000 in the Minneapolis – St. Paul area. The total fees and costs through trial when the rights at stake are valued above $25 million, ranges from $1,500,000 to $1,933,000 in the Minneapolis – St. Paul area. The AIPLA report of this data is attached as Exhibit 27.

18. The total fees and costs incurred by 3M to prosecute its claims against Mr. Mohan and to defend against his counterclaims is substantially less than the typical experience as reported by the AIPLA. This attests to the efficiency of the management and handling of the case.

19.  Unfortunately, 3M was forced to incur fees and costs to respond to various motions asserted by Mr. Mohan as well as his counterclaims. Mr. Mohan moved to change venue or dismiss for lack of personal jurisdiction (Dkt. No. 2); to add Amazon.com as a party (Dkt. No. 43); and to have sanctions imposed against 3M and its outside and inside attorneys (Dkt. No. 117). Each of his motions was denied. (Dkt. Nos. 106, 63, 140). Mr. Mohan's counterclaims asserted antitrust violations, tortious interference with contract, and unfair competition claims. (Dkt. No. 4). As a consequence, 3M was forced to move for judgment on the pleadings regarding the antitrust counterclaims (Dkt. No. 81), which were ultimately dismissed with prejudice on stipulation. (Dkt. No. 92 and 93). The remaining counterclaims were dismissed with prejudice on summary judgment. (Dkt. No. 205).

20.  3M was also forced to incur fees and costs as a consequence of the fact Mr. Mohan had subpoenas issued for five third-party companies and served two expert reports. None of these third-party companies and neither "expert" testified at trial on Mr. Mohan's behalf, but 3M was forced to address each subpoena and each expert report as they were served. 3M was also forced to respond to Mr. Mohan's pre-trial motions seeking to preclude 3M from presenting expert testimony from John Grudnowski, Hal Poret, and Craig Oster.

21.  Paragraphs 19 and 20 summarize some of the instances in which Mr. Mohan's *pro se* status added to the complexity of the case. While none of his motions, claims, and tactics had merit in 3M's view, and none succeeded before the Court, each motion, claim, and tactic required a serious and thoughtful response for at least two reasons. One, 3M's duty to the Court required a thoughtful and well supported response.

Two, 3M was protecting the value of one of its most important brands and family of trademarks. This case was not less expensive in fees and costs because Mr. Mohan chose to represent himself. The document discovery phase of the case was also more complex because of Mr. Mohan's *pro se* status. As detailed at paragraph 14 of the Bowbeer Declaration, 3M received an "electronic dump" of Defendant's documents without useful differentiation between the relevant and the irrelevant in a form that was not easily searchable. Thus, in at least these respects, the fees and costs incurred in this case may have been greater because of Mr. Mohan represented himself.

22. The following table re-states the costs incurred by 3M to prosecute this case and defend against the Defendant's counterclaims, as detailed in the Andersen and Bowbeer Declarations:

| Category of Costs | Source | Total Amount |
|---|---|---|
| Filing Fee | Andersen Declaration at ¶ 2; Ex. 1 | $350.00 |
| Deposition Fees | Andersen Declaration at ¶ 3; Ex. 2 | $5,825.23 |
| Trial Transcript | Andersen Declaration at ¶ 4; Ex. 3 | $34.00 |
| Witness Fees & Expenses | Andersen Declaration at ¶ 5-6; Exs. 4; 4-A; 4-B; 4-C; 4-D | $93,638.39 |
| Copy Costs | Andersen Declaration at ¶ 7; Ex. 5; Bowbeer Declaration at Exs. D; E | $14,204.73 |
| Exhibit Costs | Andersen Declaration at ¶ 8; Ex. 6 | $102.96 |
| Exemplification Costs | Andersen Declaration at ¶ 9; Ex. 7; Bowbeer Declaration at Exs. D, E | $3,161.08 |
| Electronic Legal Research | Andersen Declaration at ¶ 10; Ex. 8 | $12,261.83 |
| Per Diem & Hotel Expenses for Attorneys and Paraprofessionals During Trial | Andersen Declaration at ¶ 10; Ex. 8 | $2,958.97 |

| | | |
|---|---|---|
| Per Diem & Hotel Expenses Incurred to Take Defendant's Deposition | Andersen Declaration at ¶ 10; Ex. 8 | $2,095.14 |
| Parking Expenses for Attorneys & Paraprofessionals During Trial | Andersen Declaration at ¶ 10; Ex. 8 | $61.50 |
| Process Server Costs Associated With Serving Subpoenas | Andersen Declaration at ¶ 10; Ex. 8 | $1,123.00 |
| Costs Incurred to Convert Defendant's Document Production Into a Useable & Readable Format | Andersen Declaration at ¶ 10; Ex. 8; Bowbeer Declaration at Exs. D, E | $15,705.22 |
| **TOTAL** | | **$151,522.05** |

23.   3M proved its case through the testimony of thirteen (13) fact and expert witnesses and the introduction of approximately two hundred thirty-five (235) exhibits over five (5) days.  The case was commenced on June 16, 2009, and the last post-trial submission is dated October 22, 2010.  The case was staffed from commencement through trial by a Merchant & Gould-3M team that was able to have those best suited for each task responsible for that task.  The fees and costs incurred by 3M were reasonable and necessary to the prosecution of 3M's claims and the defense of Mr. Mohan's counterclaims.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated this 20th day of December, 2010       s/Allen Hinderaker
                                            Allen Hinderaker